JOHN W. WEAVER ET AL. v. P. C. WEAVER.

(Filed 17 April, 1912.)

1. Deeds and Conveyances—Time of Delivery—Control of Grantor.
    In order to make a valid delivery of a deed the grantor must part with the possession of the deed, with all power or control over it at the time of delivery.

2. Same—Instructions to Deliver.
    A deed made by a father to a son, reserving a life estate, and given to another for safe keeping, with the understanding that the grantor retained control over it, with power of cancellation, *Held* not to be a valid delivery, though the grantor may have instructed the delivery to be made after his death if he had not taken it up or canceled it.

3. Deeds and Conveyances—Time of Delivery—Control of Grantor—Possession by Grantee—Presumptions—Evidence.
    The presumption of a valid delivery of a deed, reserving a life estate, from the possession in the hands of a third person for the benefit of the grantee, is rebutted by showing that the grantor had retained control over it during his lifetime, with the right of cancellation.

APPEAL by defendant from *Justice, J.,* at January Special Term of ROWAN.

*T. F. Kluttz and Whitehead Kluttz for plaintiffs.*
*P. S. Carlton and R. Lee Wright for defendants.*

CLARK, C. J. This is an action to set aside a deed from Henry Weaver to the defendant Peter C. Weaver. The only question before the Court is whether there was in law a delivery of the deed unconditionally in escrow, for the benefit of the defendant P. C. Weaver.

The evidence, briefly stated, is as follows:

Deaton, witness for the plaintiff, testified that Henry Weaver told him he wanted to make a deed to Peter Weaver, but wanted it fixed so that he (Henry Weaver) could have it during his lifetime; 'Squire Linn had told him that he could have the deed so fixed that he could hold the land during his lifetime; the deed was drawn with this reservation of a life interest; nothing was said to him by Henry Weaver, then or at any other time, about giving the deed to Peter Weaver; that he never delivered it to him or any one else; that it remained in witness's safe until Henry Weaver died; that he did not turn it over to 'Squire Linn, and only knew that it was out of his safe after Henry's death and had been turned over to Peter, by his telling him so; there was no consideration expressed in the deed.

Linn, witness for defendant, testified that Henry Weaver told him he wanted a lifetime right reserved, and to leave the papers with him; he said in case anything should happen and his son should not treat him with the respect he ought to have, that he would take his deed up; he did not say he would tear it up, but that was about what he meant; that he told him to put the deed in Deaton's safe; that after Henry Weaver's death the witness got the deed out of Deaton's safe and sent it for registration, at the request of Peter; that he did this because Henry Weaver had left it in his possession; that if Henry had called for it, he would have given it up to him; that Henry told him that if Peter did not treat him right, that he would come and take it up; that he wanted to keep his thumb on it and did not want to give his right away; that the land was to go to Peter, if Peter treated him right; Peter was to come in possession after Henry's death if the contract was carried out; in other words, if he did not call for it during his lifetime, the land was to be Peter's at his death; Henry said I should give it to Peter; this deed conveyed all the land Henry Weaver had. Peter was living with his father at the time of his death; all other children had married and moved off.

M. C. Leazer, witness for defendant, testified that Henry Weaver, in December, 1909, said he was going to make a deed to Peter; that Peter was to take care of him. He said he got Mr. Linn and Mr. Deaton to help fix deed up; that he left deed

in hardware safe until called for; that Peter was to have the land at his death; that Peter was to have the deed for taking care of him; Peter was good to him and took care of him and was living with him at his death.

Peter Weaver, the defendant, testified that he lived with his father, Henry Weaver, all his life; that last year he demanded and got from the administrator one-half of the crops; but before that he got one-third.

The court instructed the jury that "if the deed was left with 'Squire Linn, and the testator retained control over it, and instructed Linn to hold it for him, unless he called for it, and that he retained the right to call for it and destroy it if he desired, then the testator still retained control of it until his death, and if such was the state of facts, there was no delivery in law." He further charged the jury that "if they found that Henry Weaver absolutely parted with the deed when he delivered it to Deaton and 'Squire Linn, and did not retain any control over it, and it was to be delivered to Peter at his death, that would be a good delivery," and they would so answer the issue. The court also charged: "If a deed has been simply found in the possession of other parties, duly executed, the law would presume the delivery; but when the facts shown are that the grantor retained control and power to recall the deed, that would not be a delivery, and the deed being found in the hands of a third party under such circumstances would create no presumption of delivery. That a deed is not considered executed when the maker has not gone so far with the execution that he cannot recall or control it, and if the jury should find from the greater weight of the evidence that Henry could control and recall said deed, there was no delivery; that a deed is only operative from the time of actual delivery, and if the jury should find the said deed was never delivered to said Peter C. Weaver by Henry Weaver, or any one under his direction, then the deed is void, of no effect, and passed no title to said Peter."

The court also instructed the jury that "if they found that the paper-writing was delivered to Linn and Deaton with the right on the part of Henry Weaver to recall it, and that he retained control of it, but with instructions that if he did not

recall it, it was to be delivered to Peter at his death, and it was
so delivered, still that would not make the delivery by Henry
Weaver complete."

The above was duly excepted to, but we find no error. In
*Tarlton v. Griggs,* 131 N. C., 216, it is held: "There must
be an intention of the grantor to pass the deed from his pos-
session and beyond his control, and he must actually do so,
with the intent that it shall be taken by grantee or some one
for him. Both the intent and the act are necessary to the valid
delivery. Whether such existed is a question of fact to be
found by the jury. But if the grantor did not intend to pass
the deed beyond his possession and control, so that he would
have no right to recall it, and did not do so, then there would
be no delivery in law. . . . Our conclusion is that there is
no delivery of a deed when the maker has not gone so far with
its execution that he cannot recall or control it."

To the same effect is *Bond v. Wilson,* 129 N. C., 326; *Rob-
bins v. Rascoe,* 120 N. C., 80. In the recent case of *Gaylord
v. Gaylord,* 150 N. C., 232 *et seq.,* this Court in an elaborate
opinion, reviewing the authorities in this and other States, cites
with approval from *Porter v. Woodhouse,* 59 Conn., 569: "The
delivery of a deed implies the parting with the possession and a
surrender of authority over it by the grantor at the time, either
absolutely or conditionally. But it is essential, characteristic,
and an indispensable feature of its delivery, whether absolutely
or conditionally, that there must be a parting with the posses-
sion of the deed, and with all power and control over it, by the
grantor for the benefit of the grantee, at the time of delivery."
This case also cites with approval *Tarlton v. Griggs,* and other
earlier cases. To same effect 9 A. and E. (2 Ed.), 155-157,
and cases cited. There are numerous decisions in other States
to same effect, but it is useless to add to what is so clearly stated
in our own authorities.

The court left the defendant nothing to complain of when he
told the jury as follows, which is a clear statement of the law:
"If you find that Henry Weaver retained the control of it (the
deed), and retained the right to go there and get it and destroy

it, if he desired to do so during his lifetime, that would not be delivery of it, and you will answer the third issue 'No.' "

"If you find that Henry Weaver absolutely parted with the deed when he delivered it to Mr. Deaton or 'Squire Linn, and did not retain any control over it, and it was to be delivered to Peter at his death, that would be a good delivery, and you will answer the third issue 'Yes.' "

Indeed, the question is fully discussed and settled in *Fortune v. Hunt,* 149 N. C., 358, where the Court held: "The execution and delivery of a deed by the maker to a third person must be accompanied by an unqualified instruction to deliver, to make such delivery effectual; and when the testimony of the subscribing and only witness tends but to show that the maker signed the deed, and gave it to a third person with instruction to deliver it to the proper person if he never called for it, and that it was not delivered to the grantee in the lifetime of the maker, the presumption of delivery from the unexplained possession of the grantee and its registration is rebutted. When the maker of a deed gives it to a third person to deliver, but qualifies his instructions so as to retain control over it, and dies while this condition exists, in law his death revokes the authority thus given; otherwise when the delivery is complete in grantor's lifetime, for then it relates back to the time of its delivery to the third person."