I. H. DUNLAP, Receiver, v. S. W. WILLETT et al.

(Filed 26 October, 1910.)

1. **Contracts—Seal—Evidence—Original Instrument—Presumptions.**
    Although the words "signed, sealed," etc., may appear in the face of a written obligation of guaranty, no presumption of a seal is raised when the original undertaking is in evidence, and discloses an entire absence of a seal.

2. Contracts, Interpretation—Statute of Frauds—Default of Another
—Evidence—Written—Sufficiency—Seal.

When the instrument sued on is a written obligation upon the sureties for the faithful performance by another of the duties as manager, that he shall render a just and true account of all moneys, merchandise, etc., the relationship of debtor and creditor is not created, but it is sufficient to charge them, under the statute of frauds, without the seal, to answer the default of another.

3. Contracts—Written—Conditional Delivery—Evidence.

It is competent to show that a written instrument to answer for the faithful discharge of the duties of another as manager of a corporation, or to answer for his debt or default, etc., was handed by one of the signers to the obligee therein named, subject to the control of the person delivering it, or upon an agreed condition, and not as a completed instrument; and when there is evidence that the manager has delivered such instrument to the president of the corporation for which he acts, upon the understanding that it was to be delivered to the board of directors when another had signed as surety, the person to whom it was delivered is a mere depository until the condition is complied with.

APPEAL from *Peebles, J.,* at the May Term, 1910, of CHATHAM.

The plaintiff, as receiver of the Farmers' Alliance Exchange, sued the defendant upon the following obligation:

State of North Carolina—Chatham County.

Know all men by these presents, that we, Stephen W. Willett, as principal, and_____, as sureties, are held and firmly bound unto Wm. P. Dark, president of board of directors of the Farmers' Alliance Exchange Company store, located at Bear Creek, in the county of Chatham, State of North Carolina, in the sum of five thousand ($5,000) dollars, to the payment of which well and truly be made, we bind ourselves, jointly and severally and firmly by these presents. Signed and sealed, this 25th day of August, 1907.

The condition of the foregoing obligation is such that, whereas, the above bound man, Stephen W. Willett, has been duly elected business manager of the Farmers' Alliance Exchange Store, located at Bear Creek, in the county of Chatham, State of North Carolina, for the term of one year from the second

Tuesday in August, 1907, to the second Tuesday in August, 1908, and to continue in the discharge of the duties of the office of business manager until his successor is duly elected and gives his bond.

Now, therefore, if the said Stephen W. Willett shall, during his continuance in the office of business manager of the Farmers' Alliance Exchange Store, aforesaid, faithfully execute the duties thereof and render a just and true account of all money, merchandise and other property belonging to the said store company which may come into his hands as business manager, then the above obligation to be void, otherwise to remain in full force and effect.

(Signed)    S. W. WILLETT, *Mgr.*

J. D. WILLETT, $1,000.

T. L. PHILLIPS, $1,500.

J. J. JOHNSON, $1,500.

W. L. GOLDSTON, $750.

W. L. Goldston makes affidavit that he is worth over and above his exemptions by law and all liabilities seven hundred and fifty dollars ($750). This December 14, 1907.

W. L. GOLDSTON.

Sworn and subscribed to before me, this December 14, 1907.

A. W. WICKER, J. P.

He alleged that S. W. Willett had been duly appointed general manager of the corporation Farmers' Alliance Exchange, and had, during his term, so mismanaged the business of the corporation as to wreck it financially, and set forth the particular violations of his duty constituting breach of the bond. The defendants' defense is rested mainly upon the following further defense in their answer: "First. That the instrument referred to in the second paragraph, as defendants are informed and believe, was never legally executed and delivered, and that the defendants, sureties, signed the same with the express understanding that other sureties should also sign and justify to the amount of $5,000, and that the said instrument so signed by the defendants was never accepted and approved by the Farmers' Alliance Exchange." At the trial, the plaintiff examined W.

P. Dark as a witness, who testified as follows: "I was chairman of the board of directors of the Farmers' Alliance Exchange. S. W. Willett gave me the bond mentioned in the pleadings to get R. H. Dixon to sign it, saying R. H. Dixon had promised to sign it to make out the $5,000. He told me to give it back to him after Dixon had signed it, so that he could present it to the board of directors. Dixon never signed it. I kept the bond until the receiver sent for it, and then I carried it to him. It was never delivered to me as a bond." At the conclusion of the testimony of this witness, the following occurred: The plaintiff said he had no other evidence touching the delivery of the bond. Thereupon the court told the plaintiff that he would have to tell the jury that the evidence was not sufficient to show delivery of the paper-writing as a bond. In deference to this intimation, the plaintiff submitted to a nonsuit and appealed to the Supreme Court. Judgment of voluntary nonsuit entered.

*Hayes & Bynum* for plaintiff.
*H. A. London & Son* for defendants.

MANNING, J. The obligation sued upon in this action is not technically a bond, because it is not under seal. Although there appears in it the words, "Signed and sealed, this 25th day of August, 1907," the original was offered in evidence which distinctly shows that no seal or device representing a seal appears to it, and no presumption of seal can be raised in face of the fact that the original, produced and exhibited in evidence, discloses an entire absence of seal. No statute required the execution of the obligation of defendants under seal, as in case of grants from the State (*Aycock v. R. R.,* 89 N. C., 321); the undertaking of defendants was good as their obligation without seal. Nor does the instrument sued upon create the relation of debtor and creditor, as an evidence of such relationship, but it is an undertaking by the defendants to be liable for the losses sustained by the corporation for the failure of its general manager to observe the rules and directions authoritatively prescribed for the conduct and management of its own business. The evidence offered by the plaintiffs clearly shows that the in-

strument sued upon, when passed to the possession of Mr. Dark, as president of the corporation, was not complete; and that even when completed, as contemplated by the condition of its tradition to Dark, it was to be tendered by Willett, the general manager, to the board of directors of the corporation for its acceptance or rejection. It was competent for the corporation to direct the undertaking to be made to its presiding officer, for and on its behalf, and to reserve to its governing board the right to approve or disapprove its form or the solvency of the sureties thereto. The only inference to be drawn from plaintiff's evidence sustains this conclusion. The reason for the requirement that the defendant's obligation be in writing, is the statute of frauds, as the undertaking was to answer for the "default or miscarriage" of another. Being in writing, the requirement of the statute is met. And the correctness of his Honor's ruling depends upon whether the written instrument was, in law, delivered. In *Gaylord v. Gaylord,* 150 N. C., 222, *Hoke, J.,* in a learned and elaborate opinion, speaking for this Court, said: "It is a familiar principle that the question of the delivery of a deed or other written instrument is very largely dependent on the intent of the parties at the time, and is not at all conclusively established by the manual or physical passing of the deed from the grantor to the grantee." And quoting from *Waters v. Ins. Co.,* 144 N. C., 670, it is said: "This matter of delivery is very largely one of intent, and the physical act of turning over a policy is open to explanation by parol evidence." The general principle is established by that decision and the cases cited, that where an instrument is handed by one of the signers to the obligee therein named, not as a complete instrument, but subject to the control of the person delivering it, or upon an agreed condition, then the person to whom it is handed is a mere depository and the instrument is not delivered in the technical meaning of that word. 2 Words & Phrases Judicially Defined, 1965 and 1966. *Tarlton v. Griggs,* 131 N. C., 216. The evidence of the plaintiff conclusively negatives a *delivery* of the instrument in its technical and established meaning, and we find no error in his Honor's ruling. The judgment is, therefore, affirmed.                                      No error.